KAPLAN PRODUCTS & TEXTILES INC. v. UNITED STATES (No. 5136)*

United States Court of Customs and Patent Appeals,
December 12, 1963

*John D. Rode* (*Ellsworth F. Qualey*, of counsel) for appellant.

*John W. Douglas*, Assistant Attorney General, *Andrew P. Vance*, Chief, Customs Section, *Alfred A. Taylor, Jr.*, Civil Division, Department of Justice (*Mollie Strum*, trial attorney, of counsel) for the United States.

*C.A.D. 828.

[Oral argument November 7, 1963, by Mr. Rode and Miss Strum]

Before Worley, Chief Judge, and Rich, Martin, Smith, and Almond, Jr., Associate Judges

Worley, Chief Judge, delivered the opinion of the court:

This appeal is from the judgment of the United States Customs Court, Second Division, C.D. 2376, overruling the importer's protest against the collector's classification of merchandise described on the invoice as "Yarn Dyed Jacquard Satin Brocade Cloth with metal gold yarn." ■■■ The collector held the merchandise dutiable at 25 cents per pound and 22½ per centum ad valorem under the provision of paragraph 1306 of the Tariff Act of 1930, as modified by the Torquay Protocol of the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, providing:

> Woven fabrics in the piece, wholly or in chief value of rayon or other synthetic textile, not specially provided for, whether or not Jacquard-figured, value not over $4 per pound_____ 25¢ per lb. and 22½% ad val.

Appellant contends that the merchandise is properly dutiable under one of the provisions of paragraph 385 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, set out below:

> Beltings and other articles made wholly or in chief value of tinsel wire, metal thread, lame or lahn, or of tinsel wire, lame or lahn and india rubber, bullions, or metal threads, not specially provided for_____ 15% ad val.

> Woven fabrics, ribbons, and tassels, made wholly or in chief value of any material provided for in any item 385 of this Part_____ 20% ad val.

The nature of the merchandise is clear from the evidence of record which consists of a stipulation entered into between counsel, the testimony of one witness on behalf of appellant and seven exhibits submitted by appellant. The stipulation reads:

> I offer to stipulate that the imported material is a woven fabric obtained and manufactured in the following manner:
> A sheet of transparent cellophane, made from a compound of cellulose and less than 3 one-thousandths of an inch in thickness, is bonded to each side of a sheet of aluminum foil. Thereafter, this laminated article is slit or sliced into narrow widths and in such condition is woven with the rayon yarn to make the imported brocade.
> In the imported brocade the aluminum cellophane-laminated strip is of greater value than the rayon yarn.

During the testimony of the single witness, Kaplan, president of the appellant corporation, a sample of fabric agreed to be substantially similar to the imported merchandise was introduced in evidence along with a sample of cellophane-coated metal yarn.

The Customs Court held that appellant had not discharged the

burden on it to establish both that the collector's classification of the merchandise is incorrect and that the classification sought by appellant is correct. In discussing that burden, the court stated:

* * * It is well established in the field of customs jurisprudence that the classification of the collector is deemed to be correct and that he found every factor necessary to support his classification. *United States* v. *Victoria Gin Co., Inc., W. H. Morton,* 48 CCPA 33, C.A.D. 759. In cases involving classification under a provision for component material in chief value, it is presumed that the collector has determined the component material in chief value. *United States* v. *Mrs. S. Bacharach,* 18 CCPA 353, T.D. 44612. In order to overcome this presumption, plaintiff has a twofold burden of establishing the incorrectness of the classification and the correctness of the claim. In the instant case, it has been stipulated that the involved merchandise is a woven fabric; hence, plaintiff must establish that said fabric is not wholly or in chief value of rayon or other synthetic textile and is not specially provided for. * * *

Appellant takes the position that the narrow widths or strips sliced from the aluminum-cellophane sheets referred to in the stipulation constitute lame. On the basis of that contention and the stipulation that those aluminum-cellophane strips are of greater value than the rayon yarn with which they are woven to form the imported brocade, appellant urges that "the imported fabric is in chief value of lame and responds to the language of Paragraph 385 either as a woven fabric or an article in chief value of lame."

In summarizing the testimony, appellant states:

The aluminum-cellophane thread or yarn is a new product since the Tariff Act of 1930 was enacted. It has superior qualities (non-tarnishing, suitability for weaving) to metallic threads or yarns, lame, etc. on the market in 1930 and has practically supplanted those items.

The aluminum found in the aluminum-cellophane thread is narrow and flat. Lame, in 1930 frequently was coated with wax or lacquer. The aluminum strip is covered on both sides with cellophane. The aluminum-cellophane yarn is an improved type of lame.

Appellant further sets out the following as the questions presented:

1. Is the aluminum-cellophane strip found in the imported brocade lame?
2. Is the lame provided for in Paragraph 385 required to be in chief value of metal?

The Government urges that the aluminum-cellophane strips are not lame and that the merchandise is not classifiable under either of the provisions of paragraph 385 asserted by appellant.

Although the Customs Court concluded that appellant had not proved the merchandise was improperly classified in paragraph 1306 by the collector, it did not make an express determination whether the aluminum-cellophane strips constitute lame. In the view we take of the case, the question whether such strips fall within the term "lame" is the basic issue in the determination of whether the goods are, in the

terms of paragraph 1306, "not specially provided for," and hence, of whether classification in that paragraph is correct. Since the strips are a new product first produced after passage of the Tariff Act of 1930,[1] the question is whether the meaning of lame at the time of the Act was such as to include the new product. See *Davies Turner & Co.* v. *United States*, 45 CCPA (Customs) 39, C.A.D. 669.

In arguing whether the aluminum-cellophane strips are lame, both parties rely on statements concerning the latter material in the 1929 Summary of Tariff Information and the 1948 Summaries of Tariff Information, which statements are quoted in appellant's brief. The 1929 Summary states:

"Description and uses.—Tinsel wire, lame or lahn, and bullion:

The testimony discloses the fact that both lame or lahn and bullions begin their existence in the form of tinsel wire. This is round wire composed principally of copper or brass, and usually coated with a bright metal, such as gold, silver, bronze, or foil. The article in this form is well known under the name of tinsel wire in trade and commerce and also in tariff nomenclature, and is devoted to various distinctive uses.

Lame or lahn is produced by drawing the round tinsel wire through metal rollers, whereby it is flattened into various widths. At the same time it is generally subjected to an ornamental corrugating process, or to a coating or coloring process. When thus flattened and corrugated or coated or colored the article no longer bears the name of tinsel wire in trade and commerce or to tariff nomenclature but is known as lame or lahn.

Bullion is produced by subjecting lame or lahn to a twisting process whereby it is permanently brought into a hollow spiral form. * * *

\*       \*       \*       \*       \*       \*       \*

Tinsel thread and string are lame or lahn wound around a cotton or silk core. * * *

The 1948 Summaries include the following:

Tinsel wire is round wire composed chiefly of copper or brass. It is usually coated or plated with a bright metal, such as real or imitation gold or silver and it is also produced in colors. Lame (a French word) (lahn in Germany) is manufactured by passing the tinsel wire through metal rollers which flatten it into various widths depending on the gage of the wire; it is often subjected to ornamental corrugating or coloring processes. Bullions are made by twisting lame or lahn to produce hollow spiral forms. Tinsel thread is lame wound around a suitable core such as cotton or silk. Tinsel fabrics, belting, ribbons, tassels, and other articles are goods in which tinsel products, usually lame or metal thread are used to produce metallic effects.

Those statements reveal that lame is formed from round tinsel wire flattened by drawing through rollers as contrasted to the formation of the present strips from a laminated article comprising a sheet of aluminum foil bonded between two cellophane sheets by slitting or

---

[1] The witness Kaplan testified that the strips were first produced in about 1936 or 1937.

slicing the article into narrow widths. Appellant's witness Kaplan confirmed that distinction, testifying:

Lame was a metal that was produced usually by rolling various thickness of metal wire so that it would be flat and then slit into a given width which varied depending on the fabric, and more often than not it was coated with either wax or lacquer.

When asked what the aluminum-cellophane strips, represented by Exhibit 5, are called, Kaplan did not attribute the name lame to them. Instead, he testified:

Q. What is Exhibit 5 called, Mr. Kaplan? A. It is given many names but it is basically a cellophane-coated metal yarn.

Q. Is it sold under trade names in this country? A. It is, sir.

Q. Could you give me, give the court some of those names under which it is sold in this country? A. Well, the first and most popular name is "lurex" made by the Dobeckmun Company.

Q. Are there other trade names? A. There have been others that followed, such as "metlon." Today there are many.

Kaplan also testified:

Q. In your opinion does this imported brocade respond to the term "woven fabric of lame or lahn"? A. It responds to the proper name of the yarn today, which is the cellophane metal. It is not referred to by name as lame or lahn.

The witness further compared lame with the strip of Exhibit 5 in the following testimony:

Q. Mr. Kaplan, will you compare lame, which I believe you defined as a flat metal which was corrugated or coated with wax, with Exhibit 5 insofar as the purpose of the wax and cellophane are concerned? A. Well, the only essential difference between them is that *lame is primarily metal with a very thin coating, whereas the cellophane metal thread is metal with primarily a construction of two cellophane surfaces adhering to it.* In one the metal is almost the total construction, in the other the coating becomes the total construction, which is the advance of protecting the yarn, making it suitable for weaving and keeping it from tarnishing.

Q. What is the purpose of the wax coating in the lame that you testified to? A. Its purpose is to try to delay tarnishing for as long as possible.

Q. What is the purpose of the cellophane coating in Exhibit 5? A. Primarily to create a construction that would give it the strength and flexibility for weaving purposes. (Emphasis supplied)

We think the evidence demonstrates that the aluminum-cellophane strips are of a different construction than lame, with the cellophane serving a different purpose than the thin coating of wax or lacquer on lame; are made in a different manner than lame; and are designated by a different name than lame. That the strips, apparently because of their superior properties,[2] may have supplanted lame, does not alter the fact that the strips are not shown to fall within the term

---

[2] Appellant in his brief refers to the superior properties as "non-tarnishing, suitability for weaving."

lame as used in the Tariff Act. See *Davies Turner & Co.* v. *United States*, supra.

It being determined that the aluminum-cellophane strip is not lame, the merchandise cannot fall under paragraph 385 and it is not necessary to consider the second question posed by appellant, i.e., whether lame is required to be in chief value of metal.

Appellant thus has failed to show the merchandise is classifiable under the provisions of paragraph 385. Since he has not offered evidence of the relative value of the component materials, rayon, aluminum and cellophane, individually, he additionally has failed to show the merchandise is not properly classifiable in paragraph 1306 as woven fabrics in chief value of rayon.

The judgment of the Customs Court is *affirmed*.